IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHNATHON WALLACE,** :<br>    **Plaintiff** :<br>  :<br>  v. :<br>  :<br>**CENTRE COUNTY** :<br>**CORRECTIONAL** :<br>**FACILITY,** *et al.*, :<br>    **Defendants** : | No. 1:24-cv-10<br><br>(Judge Rambo) |

### <u>MEMORANDUM</u>

This is a prisoner civil right case filed pursuant to 42 U.S.C. § 1983 in which *pro se* Plaintiff Johnathon Wallace ("Wallace") alleges violations of his civil rights by various governmental entities in connection with his incarceration at Centre County Correctional Facility ("CCCF"). In accordance with the Prison Litigation Reform Act, the court has conducted an initial review of Plaintiff's complaint. For the reasons set forth below, the court will dismiss the complaint without prejudice and grant Plaintiff leave to file an amended complaint.

I.   **BACKGROUND**

Wallace filed this case on December 11, 2023, and the court received and docketed the complaint on January 3, 2024. (Doc. No. 1.) The complaint alleges four unconnected violations of Wallace's civil rights.[1]

---

[1] In accordance with the legal standard set forth below, the court accepts the allegations in the complaint as true and draws all reasonable inferences therefrom

The first alleged civil rights violation occurred on September 15, 2022, when Wallace was housed in a "suicide cell." (*Id.* at 5.) Wallace purportedly noticed that the cell was "dirty," with blood on the floor and wall, a urine smell from the floor and toilet, spider webs behind the bunk bed, and "hair DNA" on the bunks. (*Id.*) Wallace expressed his concerns about the cell not having been properly cleaned to a correctional officer. (*Id.*) At this time, a nurse came to the cell to check his blood pressure. (*Id.*) He again expressed his concerns about the cleanliness of the cell. (*Id.*) The nurse checked the cell and said that the blood on the wall "could be ketchup," despite the fact that "suicide cells do not receive ketchup." (*Id.*)

Wallace refused to return to his cell based on his concerns that the cell was not clean. (*Id.*) A lieutenant overheard his refusal and allegedly called a "code," which resulted in four more officers "storming" the cell. (*Id.*) The officers allegedly threw Wallace headfirst into the back wall of the cell. (*Id.*) The lieutenant then purportedly threatened Wallace with an "active Taser glove," and told him to stop resisting. (*Id.*) Wallace allegedly responded, "I'm not resisting[,] I'm not[,] please stop[,] tell your men to get off of my face and back pleeeease!!!"

---

in the light most favorable to Plaintiff. *Kedra v. Schroeter*, 876 F.3d 424, 434 (3d Cir. 2017). *Pro se* documents are "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, Plaintiff's complaint, "however inartfully pleaded," will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

(*Id.* [sic]).  Hearing Wallace's pleas, the officers purportedly began to "loosen up," at which time the lieutenant gave them a signal to stand Wallace up as they left the cell.  (*Id.*)  Wallace felt pain in his back and neck after the alleged assault.  (*Id.*)

After a shift change, a different lieutenant came to Wallace's cell and allegedly took pictures of his wounds and directed a nurse to come to the cell.  (*Id.*)  The nurse gave Wallace Motrin and ointment for his wounds.  (*Id.*)  At some point during the night following this incident, Wallace allegedly had a seizure and awoke to find himself soaked in his own urine.  (*Id.*)  Wallace was examined by a nurse following the seizure but was not taken to the hospital.  (*Id.* at 5-6.)

The second alleged civil rights violation began on November 10, 2022.  (*Id.* at 6.)  On that date, an individual named Cheyenne Dunn allegedly paid bail for Wallace to be released from CCCF.  (*Id.*)  Prison officials informed him that Philadelphia County, Pennsylvania had 72 hours from the time he posted bail to pick him up for an arrest warrant from that county.  (*Id.*)  Despite this 72-hour time limit, prison officials purportedly kept him in custody at CCCF until November 18, 2022, at which time officials from Philadelphia County picked him up.  (*Id.*)  Wallace was transported to Curran-Fromhold Correctional Facility[2] in Philadelphia, Pennsylvania.  (*Id.*)

---

[2] The complaint refers to this jail as "Currman From-hold correctional facility." (*Id.*)  The court assumes this is meant as a reference to Curran-Fromhold Correctional Facility.  (*Id.*)

During his incarceration in Curran-Fromhold Correctional Facility, a Philadelphia County judge purportedly terminated the detainer that allowed Philadelphia officials to incarcerate Wallace, at which point Centre County officials purportedly "remodifie[d]" the terms of his bail, despite Wallace not having committed any violation of the terms of his release. (*Id.*) Wallace allegedly remained in Curran-Fromhold Correctional Facility until December 10, 2022, at which point Centre County officials arrested him and transported him back to CCCF. (*Id.*) Wallace was released on December 16, 2022. (*Id.*) Wallace alleges that both the public defender representing him in his criminal proceedings and the presiding judge allowed the district attorney's officer to falsify documents that led to him being in custody for longer than he was legally allowed to be. (*Id.*)

The third alleged civil rights violation occurred in CCCF in 2023.[3] During the Muslim holy month of Ramadan,[4] Wallace was purportedly forced to act as an Imam[5] because the prison did not have an Imam or other religious leader employed

---

[3] The complaint does not specify how Wallace came to be incarcerated in CCCF again following his purported release on December 16, 2022.

[4] Ramadan is a holy month observed in the Islamic faith during which adherents fast from dawn until sunset every day. *See Ramadan*, WIKIPEDIA, https://en.wikipedia.org/wiki/Ramadan (last visited Jan. 23, 2024).

[5] The complaint states that Wallace "had to practice the eman position." (*Id.*) The court assumes that this is meant as a reference to the position of Imam, a religious leader in the Islamic faith.

for its Muslim inmates.  (*Id.*)  At the end of Ramadan, the prison purportedly did not provide a feast for Eid Al-Fitr.[6]  (*Id.*)  Wallace alleges that the limits on his ability to celebrate Eid Al-Fitr violated his right to religious freedom under the First Amendment.  (*Id.* at 7.)

The fourth alleged civil rights violation occurred in the summer of 2023.  (*Id.*)  During this period, Wallace was purportedly not allowed to have outdoor recreation.  (*Id.*)  Wallace additionally alleges that the prison did not have any policies or procedures in place for conducting regular fire drills during these times (*Id.*)  Wallace alleges that these conditions of confinement violated his rights.  (*Id.*)

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2), district courts are required to review complaints in civil actions where a litigant is proceeding *in forma pauperis*.  28 U.S.C. § 1915(e)(2).  If the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief, then the district court must dismiss the complaint.  *Id.*  In dismissing claims under § 1915(e)(2), district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules

---

[6] "[T]he religious holiday of Eid al-Fitr is celebrated by Muslims worldwide because it marks the end of the month-long dawn-to-sunset fasting of Ramadan." *Eid al-Fitr*, WIKIPEDIA, https://en.wikipedia.org/wiki/Eid_al-Fitr (last visited Dec. 23, 2024).

of Civil Procedure. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When evaluating the plausibility of a complaint, the court is required to "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *Kedra*, 876 F.3d at 434 (stating that the court "must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]" (citation and internal quotation marks omitted)).

Additionally, in the specific context of *pro se* prisoner litigation, a district court must be mindful that a document filed *pro se* "is to be liberally construed." *Estelle*, 429 U.S. at 106. A *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## III. DISCUSSION

Wallace has filed his complaint pursuant to Section 1983, which provides, in pertinent part:

6

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005. Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.*

To state a claim under Section 1983, a plaintiff must sufficiently allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode*, 845 F.2d at 1207); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

7

### A.     Misjoinder

At the outset, the court will analyze whether Wallace's claims should be severed or dismissed pursuant to Federal Rules of Civil Procedure 20 and 21 because they are not properly joined in the same lawsuit. Under Rule 20, claims against multiple defendants may be joined in the same action only if:

> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> **(B)** any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

The court finds that the Wallace's complaint violates Rule 20 by joining unrelated claims in a single action. Wallace alleges four violations of his civil rights—an excessive force claim, falsification of documents by government officials that kept him in prison beyond the date he would otherwise be released, infringement of his right to practice his religion, and purportedly unconstitutional conditions of his confinement—that bear no relation to one another other than the allegation that they occurred in the same prison. There is simply no question of law or fact that is common to all four questions. The court accordingly concludes that Wallace's second, third, and fourth claims are misjoined to his excessive force claim in violation of Rule 20.

Misjoinder of claims, however, is not grounds for dismissal of the entire action.  *See* Fed. R. Civ. 21; *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972).  Rather, a court has two options when a plaintiff has misjoined claims: (1) "drop" the misjoined parties from the case on "just terms" or (2) sever the claims into separate lawsuits.  Fed. R. Civ. P. 21; *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006).  When a party is dropped under Rule 21, he is dismissed from the case without prejudice.  *DirecTV, Inc.*, 467 F.3d at 845 (citing *Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1068 (3d Cir. 1979)).  The statute of limitations for claims against that defendant is not tolled because the initial complaint is treated "as if it never existed."  *See id.* (quoting *Brennan v. Kulick*, 407 F.3d 603, 606 (3d Cir. 2005)).  When, on the other hand, the claims are severed, "the suit simply continues against the severed defendant in another guise."  *Id.* (citing *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n.6 (3d Cir. 1999)).

District courts have discretion to choose whether misjoined claims should be dismissed or severed.  *Id.*  Courts may only dismiss misjoined claims, however, if doing so would be just, "that is, if doing so 'will not prejudice any substantial right'" of the plaintiff.  *Id.* (internal emphasis omitted) (quoting *Sabolsky*, 457 F.2d at 1249).  "Hence, a court must analyze the consequences of a dismissal on a claimant's ability to meet the statute of limitations prior to choosing dismissal over severance."  *Id.*

In this case, dismissal of Wallace's claims as misjoined would not impact his ability to refile the claims before the expiration of the applicable statute of limitations. Wallace's claims are subject to Pennsylvania's two-year statute of limitations for personal injury actions. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). Because the claims occurred during or after September 2022, none of them would be deemed untimely until September 2024 at the earliest. Accordingly, the Court will dismiss Wallace's second, third, and fourth claims without prejudice rather than severing them because dismissal of the claims would not prejudice Wallace's substantial rights. *See DirecTV, Inc.*, 467 F.3d at 845.

B.     **Merits**

Having dismissed Wallace's second, third, and fourth claims without prejudice as misjoined, the court's analysis proceeds to the merits only as to Wallace's excessive force claim. Wallace brings the excessive force claim against CCCF and does not name any individual defendants who were personally involved in the alleged excessive force. (*See* Doc. No. 1 at 2-3, 5-6.)

The court will dismiss the excessive force claim. Section 1983 only allows a civil rights claim to be brought against a "person." 42 U.S.C. § 1983. County jails are not "persons" subject to suit under the statute. *See, e.g.*, *Beaver v. Union Cnty. Pa.*, 619 F. App'x 80, 83 (3d Cir. 2015); *Boomer v. Lewis*, 541 F. App'x 186, 192 (3d Cir. 2013); *Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013).

Accordingly, because Wallace has only brought his excessive force claim against an entity that is not subject to suit under § 1983 and has not named any individual defendants, dismissal is appropriate.

### C. Leave to Amend

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a court dismisses a claim that is merely deficient. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* The court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the court finds that granting Wallace leave to amend his Section 1983 claims against Defendant CCCF would be futile because CCCF is not a "person" under Section 1983. The court will nonetheless grant Wallace leave to amend to name individual defendants who were personally involved in the alleged excessive force against him. Failure to file an amended complaint naming individual defendants will result in the dismissal of Wallace's excessive force claim without further leave to amend.

## IV. CONCLUSION

The Court will grant Wallace leave to proceed *in forma pauperis*, deem his complaint filed, dismiss his excessive force claim for failure to state a claim upon which relief can be granted, and dismiss his other claims without prejudice as misjoined. The court will grant Wallace leave to file an amended complaint that is limited to his excessive force claim. An appropriate order follows.

s/ Sylvia H. Rambo<br>
United States District Judge

Dated: January 23, 2024